**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 19, 2007
Decided July 24, 2007

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 06-1370 | Appeal from the United States District Court for the |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Northern District of Illinois, Eastern Division. |
| *v.* | No. 04 CR 473 |
| TARIQ ISA, *Defendant-Appellant*. | **Amy J. St. Eve**, *Judge*. |

**O R D E R**

Tariq Isa pleaded guilty to conspiracy to possess approximately 1,728,000 tablets of pseudoephedrine knowing or having reason to know they would be used to manufacture a substance containing methamphetamine, and attempting to possess those tablets knowing or having reason to know they would be used to produce methamphetamine. The district court sentenced Isa to 235 months' imprisonment, a term at the bottom of the advisory sentencing guidelines range. Isa appeals the reasonableness of his sentence and challenges the presumption of reasonableness this circuit accords sentences within a properly calculated guidelines range. We affirm.

## I.  Background

In May 2002 Isa agreed to act as a middleman and broker a deal for the purchase of tablets containing pseudoephedrine, an ingredient in the manufacture of substances containing methamphetamine.  Isa was approached by Hafez Hussein, who offered to buy 200 to 400 cases of the tablets.  Isa then contacted Abe Nassar, a pseudoephedrine seller, and asked to purchase 200 cases, or approximately 1,728,000 tablets of pseudoephedrine, at $650 to $700 per case.  That amount, after processing, would yield about 143 pounds of methamphetamine, the equivalent of 65,000 individual quantities of the drug.  With these arrangements made, the deal went down in May 2005.  Hussein provided Isa with $99,150 in cash—enough money to buy approximately 153 cases—with Nassar covering any gap between the offered money and the asking price.  Isa placed $66,780 in a cardboard box and took it to Nassar, who was waiting in a car parked outside Isa's home.

On May 11, 2004, Isa was charged in a two-count indictment with violations of 21 U.S.C. §§ 846 and 841(c)(2) for conspiring to knowingly and intentionally possess and distribute, and attempting to possess and distribute approximately 1,728,000 tablets of pseudoephedrine, knowing and having reasonable cause to believe the pseudoephedrine would be used to manufacture a controlled substance, namely, mixtures containing a detectable amount of methamphetamine.  A superseding indictment on September 7, 2004, also charged Isa with a third count, being a convicted felon in possession of a loaded firearm in violation of 18 U.S.C. § 922(g)(1). That count was severed in January 2005, and in September 2005 Isa pleaded guilty without a plea agreement to the first two counts of the superseding indictment.  Isa agreed with the government's factual basis for his plea but reserved the right to contest the number of tablets involved in the crimes.

The district court calculated a sentencing range between 235 and 293 months for each of Counts I and II (the pseudoephedrine-related counts) of the superseding indictment.  The court set Isa's base-level offense at 36 and his criminal history category at III in light of a previous California state conviction for pseudoephedrine trafficking.  (In fact, Isa's federal crime occurred while he was on parole for his state trafficking conviction.)  Acknowledging the advisory nature of the guidelines and taking into account the sentencing factors in 18 U.S.C. § 3553(a), the district court sentenced Isa to 235 months' imprisonment.

## II. Discussion

Isa's sentence of 235 months is at the bottom of a properly calculated guidelines range; as such, it is entitled to a rebuttable presumption of reasonableness on appeal. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).  A defendant can rebut this presumption "only by demonstrating that his or

her sentence is unreasonable when measured against the factors set forth in § 3553(a)." *Id.*

Isa first challenges this circuit's framework for reviewing the reasonableness of sentences. He contends that *Mykytiuk*'s rebuttable presumption of reasonableness for sentences within a properly calculated guidelines range is a return to a pre-*Booker*,[1] unconstitutional sentencing regime. Isa argues this presumption gives undue weight to the guidelines and presanctions all but the most rare nonguidelines sentences.

In its recent decision in *Rita v. United States*, the Supreme Court held that courts of appeals may apply a presumption of reasonableness to sentences imposed within a properly calculated guidelines range. 127 S. Ct. 2456, 2459 (2007). The Court reasoned that such a nonbinding presumption "recognizes the real-world circumstance that when the judge's discretionary decision accords with the [Sentencing] Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable." *Id.* at 2465. In light of *Rita*, Isa's first argument fails.

Isa next makes several arguments in an effort to overcome the appellate presumption of reasonableness, but all are exceedingly weak. First, he contends that the large number of pills attributed to him is not a reasonable measure of his culpability. He acknowledges that even if the total pill count in the transaction had been much lower, his sentencing range would have been unchanged.[2] He argues instead that his case is one in which drug quantity does not appropriately reflect his role or culpability in the offense. Isa asserts that in the circumstances of this case, the drug quantity was really just a matter of fortuity. He was neither the supplier nor the buyer, but merely the broker of the pills, and as such, he had little control over the number of pills involved in the transaction. He suggests his profit in the deal—just $9000 in contrast to the hundreds of thousands the buyer hoped to earn—is a better barometer of his culpability. Isa does not cite any case law (and we can find none) in support of the proposition that a lesser degree of culpability is attributable to a broker versus a buyer or supplier. The district judge considered and rejected this argument, as she was entitled to do in the exercise of her post-*Booker* discretion.

Pill quantity aside, Isa contends the district court improperly disregarded his personal characteristics, including his age, willingness to assist the government, and his good character. As to his age (57 years), Isa notes the low recidivism rate of

---

[1]  *United States v. Booker*, 543 U.S. 220 (2005).

[2]  Isa concedes, however, that the district court's calculations were correct.

older offenders. That point notwithstanding, the district court's analysis of this factor was reasonable. The court pointed out that Isa began pseudoephedrine trafficking when he was 50 years old and was on parole when he committed the instant offense. Isa has not claimed any infirmities that might warrant special consideration. *See, e.g.*, *United States v. Bullion*, 466 F.3d 574, 576 (7th Cir. 2006); *United States v. Wurzinger*, 467 F.3d 649, 653 (7th Cir. 2006). The district court reasonably considered and rejected Isa's argument about an inverse correlation between his age and potential for recidivism.

Isa next points to his willingness to provide information to the government. However, he did not in fact provide any useful information to the authorities; the government did not file a "substantial assistance" motion pursuant to U.S.S.G. § 3E1.1. Isa's mere *willingness* to provide information does not warrant consideration in sentencing.

Finally, Isa argues his sentence was unduly harsh in light of his good character. The district court received letters discussing Isa's positive contributions to his community. The court also learned that Isa intervened in 2004 when a fellow inmate attempted to hang himself. The court did not find the letters or Isa's rescue of a fellow inmate to be sufficiently compelling to justify a below-guidelines sentence. Isa essentially asks us to reweigh factors that did not convince the district court in the first instance. This is beyond the scope of reasonableness review. "Our review is deferential to the district court's judgment; 'the question is not . . . what sentence we ourselves might ultimately have decided to impose on the defendant.'" *United States v. Newsom,* 428 F.3d 685, 686 (7th Cir. 2005) (quoting *United States v. Williams,* 425 F.3d 478, 481 (7th Cir. 2005)). Isa has failed to rebut the presumption that his within-guidelines sentence is reasonable.

AFFIRMED.